```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/26/2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SARAH A. LEBRON,

                                Plaintiff,                **OPINION AND ORDER**

          -against-                               17-CV-4400 (ER) (KHP)

Commissioner
of the Social Security Administration,

                                Defendant.
-----------------------------------------------------------------X

**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Sarah Lebron ("Plaintiff"), who is represented by counsel, commenced this action against Defendant Commissioner of the Social Security Administration (the "Commissioner"), pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Plaintiff was not disabled under section 1614(a)(3)(A) of the Act from January 1, 2013, the alleged disability onset date, through the date of the decision.

      The parties submitted a joint stipulation, in lieu of cross-motions for judgment on the pleadings (the "Joint Stipulation" or "JS", Doc. No. 34), pursuant to this Court's Orders at Doc. Nos. 15 and 25. For the reasons set forth below, Plaintiff's motion be GRANTED insofar as it requests remand and the Commissioner's motion is DENIED.

## BACKGROUND

### I. *Summary of Claim and Procedural History*

      Plaintiff, who is 33 years of age, is a naturalized citizen of the United States. (Administrative Record ("R") 212.) She was born in Trinidad, where she attended school

1

through the sixth grade.  (R. 482.)  Plaintiff has four children, ages 19, 17, 13, and 11.  (R. 34.) She lives with her two youngest children.  (R. 21.)  Plaintiff completed vocational training in 2008 to become a home health attendant, after which she worked as a home health attendant from August 2008 through March 2012.   (R. 33, 231, 250, 252.)  She also worked as a retail sales representative from September through December 2012.  (R. 33, 231.)  Plaintiff testified that she stopped working on December 31, 2012 because of antiphospholipid syndrome, deep vein thrombosis, and asthma.  (R. 34, 230.)  Her symptoms included leg swelling, inability to stand or sit for long periods of time, shortness of breath, dizziness, chest pain, headaches, pain in her hips, legs, fingers and arms, and a need to elevate her legs.  (R. 34-36, 38-39, 230, 239.)

On December 13, 2013, Plaintiff filed an application for supplemental security income ("SSI") disability benefits, alleging disability beginning on January 1, 2013 due to antiphospholipid syndrome, asthma, deep vein thrombosis, inability to sit or stand for long periods of time, swelling in both legs, blood clots, and shortness of breath.  (R. 212-20, 230.) The Court assumes knowledge of and does not repeat here all of the stipulated facts concerning Plaintiff's medical treatment.  (*See* Doc. No. 34.)

Plaintiff's initial application for benefits, which was denied on February 21, 2014 (R. 88-91.), contained no reference to any mental impairments; but, prior to attending a hearing before an Administrative Law Judge ("ALJ"), Plaintiff supplemented her application to include information about mental impairments.  In this regard, Plaintiff met with the following three consultative psychiatrists who all submitted reports to the ALJ: Dr. Michelle Dean (in January 2014), Dr. David Mahony (in July 2015), and Dr. Fredelyn Engelberg Damari (in November 2015).  Dr. Dean diagnosed Plaintiff with "adjustment disorder with anxiety, chronic, due to

2

health issues" and opined that, as a result, Plaintiff has mild limitations in her ability to relate adequately with others and appropriately deal with stress. (R. 456-57.) Dr. Mahony diagnosed Plaintiff with "major depressive disorder, moderate." (R. 467, 485) Dr. Damari diagnosed Plaintiff as having a learning disorder and an IQ of 69, which is "at the lowest end of the borderline range." (R. 484.) Both Drs. Mahony and Damari concluded that Plaintiff has moderate and marked mental limitations which interfere with her ability to function on a daily basis. (R. 467, 485.) All three doctors' opinions were presented to the ALJ at a hearing on December 3, 2015.

    ALJ Hilton Miller presided over the hearing. (R. 29.) Plaintiff, a vocational expert named Sherri Plant, and two medical experts, Dr. Charles Plotz and Dr. Sharon Kohn, testified at the hearing. (*Id.*) Plaintiff testified that she walks with a cane, cannot stand for long because her legs swell, and that she has to keep her legs elevated most of the day. She testified that she has pain and swelling in her hands and cannot lift more than 5 pounds. She testified that a babysitter helps her with her two children, but that she is able to do some housework and occasional meal preparation. Although Plaintiff had supplemented her application with information about a learning disability and mental impairments, the ALJ focused primarily on Plaintiff's physical limitations at the hearing. He did not question Plaintiff at all about her mental capacity and how it limited her functioning during the hearing. Further, the ALJ's hypotheticals to the vocational expert Sherri Plan did not fully account for Plaintiff's non-exertional limitations or her IQ score. The ALJ also did not obtain a medical source statement or any records from Plaintiff's treating psychiatrist.

On January 15, 2016, ALJ Miller issued a decision finding Plaintiff not disabled. (R. 13-24.) Following the five-step sequential process contemplated in the applicable regulations, 20 C.F.R. § 416.920(a), he first determined that Plaintiff had not engaged in substantial gainful activity since November 5, 2013. (R. 15.) At step two, he determined that Plaintiff had the following severe impairments: asthma, antiphospholipid syndrome, chronic venous insufficiency, history of deep vein thrombosis and pulmonary embolism, depression, anxiety, borderline intellectual functioning, and obesity. (*Id.*) At step three he concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (*Id.*) With regard to mental impairments, the ALJ found that the severity of Plaintiff's impairments did not meet or medically equal the criteria of Listings 12.04, 12.05, and 12.06 because Plaintiff had mild restriction in activities of daily living, moderate difficulties in social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation for any extended duration. (R. 16-17.) The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that Plaintiff

> can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; occasionally balance, kneel, crouch, and squat, but never crawl; cannot perform jobs requiring the manipulation of the bilateral lower extremities, such as operating foot controls or foot pedals; and must be allowed a sit/stand option whereby every 45 minutes she can alternate positions for 5 minutes while remaining on task. She would need to avoid even moderate exposure to odors, dusts, fumes, gases, poor ventilation, toxic dusts, chemicals, and other respirator irritants. She cannot perform jobs involving hazards such as dangerous machinery, motor vehicles, unprotected heights or vibrations. She is limited to simple routine and repetitive tasks that can be explained (specifically SVP 1-2[1]) which

---

[1] "SVP," or specific vocational preparation, refers to the amount of time required for a typical claimant to learn the techniques, acquire the information, and develop the facility needed for average performance in a job. *See Specific Vocational Preparation (SVP)*, Social Security Administration, https://secure.ssa.gov/poms.nsf/lnx/0425005015#d (last visited December 17, 2018). SVP ratings are used as a guideline for determining how long it would take a claimant to achieve average performance in a job as part of the

4

> involve making simple decisions and only occasional changes in routine, and occasional and superficial contact with others.
> (R. 18.)

Based on this RFC, the ALJ concluded that Plaintiff is not capable of performing her past relevant work as a Companion, DOT 309.677-010, light, SVP 3 because this work would involve more than occasional interaction with others. (R. 23.) However, based on questions posed to the vocational expert, which did not fully reflect mental impairments noted by the consultative psychiatrists, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.*) Thus, the ALJ found that Plaintiff has not been disabled from November 5, 2013 through the date of the decision. (R. 24.)

Plaintiff appealed the ALJ's decision to the Administration's Appeals Council (the "Appeals Council") on January 21, 2016. (R. 9.) Plaintiff once again supplemented her application by submitting additional medical records from Dr. Robert Fried and Dr. Aurora Tompar-Tiu. The additional records from Dr. Fried consisted of a note indicating that Plaintiff must sit with her legs elevated "all day." (R. 762.) The additional records from Dr. Tompar-Tiu, Plaintiff's treating psychiatrist, contain three questionnaires and a mental residual functional capacity form. (R. 760, 763-771.) Some of Dr. Tompar-Tiu's conclusions concerning Plaintiff cover the period from 2014 through 2015 and the administrative record is unclear as to the extent of Dr. Tompar-Tiu's treatment of Plaintiff.[2] (R. 760) Dr. Tompar-Tiu's conclusions concerning Plaintiff, however, indicate serious mental impairments.

---

Commissioner's evaluation of whether the claimant's past work is relevant. *Id.* The Commissioner considers a claimant's education when evaluating whether the claimant performed a job long enough to learn it. *Id.*

[2] Defendant acknowledges that Dr. Tompar-Tiu is Plaintiff's treating psychiatrist. (JS 40.) Dr. Damari reported that Plaintiff began to see Dr. Tompar-Tiu for her depression in November 2015. (R. 482.)

Dr. Tompar-Tiu completed an anxiety questionnaire relating to Plaintiff's impairments from 2014 through December 2015. (R. 766-67.) In that questionnaire, Dr. Tompar-Tiu concluded that Plaintiff had generalized and persistent anxiety, persistent irrational fear, and recurrent panic attacks and obsessions, which result in Plaintiff experiencing: (1) marked restrictions of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner, (4) repeated episodes of deterioration or decompensation in work or work-like settings, and (5) a complete inability to function independently outside the area of one's home. (*Id.*)

Dr. Tompar-Tiu also completed a depression questionnaire which reported that Plaintiff exhibits depressive symptoms, including pervasive loss of interest, sleep disturbance, and difficulty concentrating or thinking, which result in Plaintiff experiencing: (1) marked restrictions of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner, (4) repeated episodes of deterioration or decompensation in work or work-like settings, (5) a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or changes in her environment would be predicted to cause her to decompensate, and (6) a current history of one or more years of inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement. (R. 764-65.)

Finally, Dr. Tompar-Tiu completed a PTSD questionnaire which reported that, since 2014, Plaintiff has exhibited medically documented findings of recurrent and intrusive

recollections of a traumatic experience, which result in Plaintiff experiencing: (1) marked restrictions of activities of daily living, (2) marked difficulties in maintaining social functioning, (3) deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner, and (4) repeated episodes of deterioration or decompensation.  (R. 768.)

Dr. Tompar-Tiu additionally provided a Mental Residual Functional Capacity Form rating Plaintiff's estimated degree of impairment as "moderately severe"[3] for Plaintiff's: (1) ability to relate to other people, (2) restrictions of daily activities, (3) deterioration in personal habits, (4) ability to respond appropriately to supervision and co-workers, (5) ability to respond to customary work pressure, (6) ability to perform simple tasks, repetitive tasks, complex tasks, and/or varied tasks.  (R. 769-770.)  Dr. Tompar-Tiu reported that Plaintiff is moderately impaired in her ability to understand, carry out, and remember instructions.  (R. 769.)

The Appeals Council added the new evidence from Drs. Fried and Tompar-Tiu to the record and considered it on Plaintiff's appeal.  (R. 5-6.)  On April 21, 2017, the Appeals Council issued a summary denial of Plaintiff's request for review of ALJ Miller's decision.  (R. 1.)  The Appeals Council noted that it considered the "additional evidence" but found that it "does not provide a basis for changing the Administrative Law Judge's decision."  (R. 2.)  The Appeals Council did not specifically discuss or analyze Dr. Tompar-Tiu's questionnaires or her Mental Residual Functional Capacity Form.

---

[3] Moderately severe is defined as "[a]n impairment which seriously affects ability to function."  (R. 771.)

7

**DISCUSSION**

*I.     The Applicable Law*

   *A.     Judicial Standard of Review of Commissioner's Determination*

The court's review of an appeal of a denial of disability benefits is limited to two inquiries. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision. 42 U.S.C. § 405(g); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record. *Id*. So long as they are supported by substantial evidence in the administrative record, the findings of the ALJ after a hearing as to any facts are conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). In cases where the Appeals Council denies review of an ALJ's decision, the ALJ's decision is the final action of the Commissioner. *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (citing *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996)). Any challenges to the Commissioner's decision in such circumstances are therefore challenges to the ALJ's decision. *Id.*

An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR"). *See, e.g.*, *Kohler*, 546 F.3d at 265 (regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (SSR). In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if deemed necessary to allow the ALJ to develop a full and fair record to explain his or her reasoning. *Crysler v. Astrue*, 563 F. Supp. 2d 418, 429 (N.D.N.Y 2008).

If the reviewing court is satisfied that the ALJ applied correct legal standards, then the court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (*per curiam*) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). Thus, the court does not determine *de novo* whether a claimant is disabled. *Id.* (citing *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). The Supreme Court has defined substantial evidence as requiring "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard means once an ALJ finds facts, a reviewing court may reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)) (emphasis omitted).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. §§ 423(d)(5)(B), 1382(a)(3)(H)(i). The Act requires the ALJ to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." 42 U.S.C. § 405(b)(1). While the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (*per curiam*), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (internal quotation marks omitted), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir.

9

2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-cv-1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence); *see also Zabala*, 595 F.3d at 409 (reconsideration of improperly excluded treating physician evidence typically requires remand). Eschewing rote analysis and conclusory explanations, the ALJ must discuss the "the crucial factors in any determination . . . with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

The reviewing Court must determine whether the ALJ's decision is supported by substantial evidence "based upon the entire administrative record, which can include new evidence that was not before the ALJ at the time he made his decision." *Ducady v. Colvin*, No. 15-cv-5887 (LGS) (KNF), 2016 WL 5462831, at *5 (S.D.N.Y. Sept. 28, 2016) (citing *Lesterhuis*, 805 F.3d at 87). When a plaintiff submits new evidence to the Appeals Council following an ALJ's decision, that evidence "becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision if the evidence is new, material and relates to the period on or before the ALJ's decision." *Id.; see also Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (new evidence is "material" if (1) it is "relevant to the claimant's condition during the time period for which benefits were denied;" (2) it is "probative;" and (3) there is "a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's application differently"); 20 C.F.R. §§ 404.970(b), 416.1470(b).

If the decision denying benefits applied the correct legal standards and is based on substantial evidence, the reviewing court must affirm; if not, the court may modify or reverse the decision, with or without remand. 42 U.S.C. § 405(g).

## II. Application of Legal Principles

### A. Whether the Commissioner Committed any Legal Errors

The Court first addresses whether the Commissioner applied the correct legal standards in reaching its decision to deny Plaintiff's claim for benefits. Plaintiff contends that the Commissioner failed to follow correct legal principles because it violated the treating physician rule by ignoring Dr. Tompar-Tiu's opinion about Plaintiff's mental capacity. As noted above, when the Appeals Council accepted the Plaintiff's supplemental evidence from Dr. Tompar-Tiu, the evidence became part of the administrative record even though it was not before the ALJ at the time he rendered his decision.

When "new evidence submitted to the Appeals Council includes the opinion of a treating physician, . . . the Appeals Council must give the same degree of deference to this opinion that an ALJ would be required to give." *Garcia v. Comm'r of Soc. Sec.*, 208 F. Supp. 3d 547, 552 (S.D.N.Y. 2016) (citing *See Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999)). Under the treating physician rule, the Appeals Council generally must give "controlling weight" to a treating physician's medical opinion as to the nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 416.927(c)(2). When declining to give controlling weight to a treating physician's opinion, the Appeals Council must provide "good reasons" for doing so. *Id.* When

the Appeals Council fails to give controlling weight to a treating physician's opinion without explaining its rationale, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." *Garcia*, 208 F. Supp. 3d at 552 (internal citations omitted) (remanding where plaintiff submitted medical questionnaires from his treating psychiatrist that were not previously made available to the ALJ but the Appeals Council provided no explanation for why it rejected this evidence in its denial of the plaintiff's request for review).

Here, the Appeals Council did not discuss Dr. Tompar-Tiu's opinion at all. It did not state the weight it was giving to the opinion or any "reasons" why her opinion, in light of the other evidence in the record, did not change the Commissioner's finding that Plaintifff is not disabled. The Appeals Council merely stated that the evidence "does not provide a basis for changing the [ALJ's] decision." (R. 2.) The Appeals Council's failure to analyze Dr. Tompar-Tiu's opinion, state the weight assigned to it, and give good reasons for its decision was legal error. *See Garcia*, 208 F. Supp. 3d at 553; *see also Collazo v. Colvin*, No. 13-cv-5758 (RJS) (HBP), 2015 WL 9690324, at *13 (S.D.N.Y. Dec. 22, 2015) ("[T]he Appeals Council stated . . . that it considered . . . the additional evidence, and that it . . . did not provide a basis for changing the [ALJ's] decision. This statement did not satisfy the regulations' requirement that the Commissioner give good reasons for the weight give [to] the treating physician's opinion.") (internal citations omitted); *Lebow v. Astrue*, No. 13-cv-5895 (ER) (FM), 2015 WL 1408865, at *7 (S.D.N.Y. Mar. 9, 2015) (remanding where Appeals Council failed to comport with treating physician rule concerning the new evidence), adopted by 2015 WL 1439270 (S.D.N.Y. Mar. 30, 2015); *La Torre v. Colvin*, No. 14-cv-3615 (AJP), 2015 WL 321881, at *13-14 (S.D.N.Y. Jan. 26, 2015) (same). Therefore,

the Appeals Council violated the treating physician rule in its treatment of the new records from Plaintiff's treating psychiatrist, Dr. Tompar-Tiu.

Additionally, the Commissioner has a duty to develop the record. When Plaintiff supplemented her application with information about mental impairments, which included opinions from two doctors that Plaintiff has moderate and marked mental limitations which interfere with her ability to function on a daily basis (R. 467, 485.), the ALJ arguably was obliged to further develop the record. *See Rosa v. Comm'r of Soc. Sec.*, 17-cv-3344 (NSR) (JMC), 2018 WL 4771531, at *3 (S.D.N.Y Oct. 3, 2018). For example, the ALJ could have sought a treating psychiatrist's medical source statement before rendering his decision. Had he done this, he could have considered Dr. Tompar-Tiu's opinions and potentially gathered additional information about the duration and extent of her treatment of Plaintiff.

### B.   *Whether the Commissioner's Decision is Supported by Substantial Evidence*

Defendant argues that the Commissioner's decision is supported by substantial evidence notwithstanding the new evidence submitted and accepted by the Appeals Council. It points to the medical opinions of the three consultative psychiatric examiners, Dr. Dean, Dr. Mahony, and Dr. Damari, which it characterizes as contradicting the opinions of Plaintiff's treating psychiatrist, Dr. Tompar-Tiu. The problem with this argument, however, is that neither the ALJ nor the Appeals Council analyzed the substance of Dr. Tompar-Tiu's opinion, which is entitled to "controlling weight" so long as it is "well-supported by medically acceptable techniques and is not inconsistent with the other substantial evidence [in the record]." *Lesterhuis*, 805 F.3d at 88. Arguably, Drs. Mahony and Damari's opinions are consistent with Dr. Tompar-Tiu's and would indicate a more severe mental impairment than the ALJ found. Further development of the

13

record also might have shed additional light on whether Dr. Tompar-Tiu's opinion was supported by medically acceptable techniques. On remand, ALJ Miller could determine that Dr. Tompar-Tiu's opinion is not entitled to controlling weight, but "that determination should be made by the agency in the first instance" and not by the Court. *Id.* at 88; *see also Ducady*, 2016 WL 5462831, at *6 (remanding for ALJ to review the new evidence before determining whether plaintiff is disabled); *Estrella obo MRE v. Berryhill*, No. 15-cv-6966 (CS) (LMS), 2017 WL 2693722, at *23 (S.D.N.Y. June 22, 2017) (same, noting that "[u]ltimately, though, the weighing of this newly submitted evidence must be made by the ALJ in the first instance rather than the Court.").

The legal errors committed by the Commission impact the ALJ's findings at step three of the five-step sequential analysis, as well as the ALJ's determination of Plaintiff's RFC, and render it inappropriate for this Court to conclude that the Commissioner's determination is supported by substantial evidence.

For example, at step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of Listings § 12.04 (depressive disorder), § 12.05 (intellectual disorder), and § 12.06 (anxiety disorder).

These Listings require, in part, a finding of at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence and pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Part 404, Subpart P. App. 1

§§ 12.04(b), 12.05(d), 12.06(b)[4]. Listing 12.04 also requires, in part, a finding of either: (1) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (2) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *Id.* § 12.04(c).

The ALJ concluded that none of these requirements were met, instead finding that Plaintiff exhibited: (1) mild restriction in her activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation. (R. 16-17.) In addition, the ALJ found that there is no evidence in the record that a minimal increase in mental demands or change in environment would cause Plaintiff to decompensate, and that Plaintiff has no history of ever living within a highly supportive living arrangement, and there is no indication of any need for such an arrangement. (R. 17.)

Dr. Tompar-Tiu's conclusions directly contradict the ALJ's findings at step three. Dr. Tompar-Tiu reported that Plaintiff exhibits marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, repeated episodes of deterioration or decompensation, complete inability to function independently outside of her home, and a residual disease process that has resulted in such marginal adjustment that even a minimal

---

[4] The Court notes that the Listings have since been revised, but these requirements were in effect when the ALJ rendered his decision. *See* https://secure.ssa.gov/poms.nsf/lnx/0434132009.

increase in mental demands or change in the environment would be predicted to cause Plaintiff to decompensate.  (R. 764-770.)

Similarly, the ALJ determined that Plaintiff has the RFC to perform light work.  (R. 18.) The ALJ conditioned this RFC determination to limit Plaintiff to "simple, routine and repetitive tasks that can be explained (specifically SVP 1-2) which involve making simple decisions, and only occasional changes in routine, and occasional and superficial contact with others."  (*Id.*) ALJ Miller determined Plaintiff's RFC, in part, because "the record shows no evidence of any mental health treatment."  (R. 20, 22.)  However, the new evidence indicates that Plaintiff began treatment with Dr. Tompar-Tiu in November 2015 or earlier and had marked restrictions in daily functioning since 2014.

In determining Plaintiff's RFC, the ALJ also looked to the reports of three consultative psychiatrists, Dr. Michelle Dean, Dr. David Mahony, and Dr. Damari, who completed single evaluations of Plaintiff in January 2014, July 2015, and November 2015, respectively, at the request of the Administration.  (R. 454-58, 465-68, 482-90.)  The ALJ recognized that the three evaluations led to "somewhat conflicting results," and therefore gave the evaluations only "partial weight."  (R. 22.)  For example, in January 2014, Dr. Dean found that Plaintiff exhibited no more than mild limitations and diagnosed Plaintiff with "adjustment disorder with anxiety, chronic, due to health issues."  (R. 456-57).  But in July 2015, Dr. Mahony found that Plaintiff had moderate limitations in maintaining attention and concentration, maintaining a regular schedule, making appropriate decisions, relating adequately with others, and dealing with stress, and marked limitations in learning new tasks and performing complex tasks independently.  (R. 467.)  Dr. Mahony concluded that Plaintiff's limitations interfere with her

16

ability to function on a daily basis. (*Id.*) In November 2015, Dr. Damari also concluded that Plaintiff had moderate and marked limitations in her mental functioning and opined that Plaintiff's limitations "may significantly interfere" with her ability to function on a daily basis. (R. 485-89.) These conclusions are consistent with the conclusions of Plaintiff's treating psychiatrist submitted to the Appeals council which, if given controlling weight, would contradict the ALJ's conclusions as to the severity of Plaintiff's impairments and her RFC. While it is true that one consulting psychiatrist and a medical expert who never examined Plaintiff (Dr. Kohn) found that Plaintiff's mental impairments did not significantly impact her functioning, neither the ALJ nor the Appeals Council analyzed Plaintiff's mental impairments in a fulsome manner as required by the statute.

In light of the new evidence provided by Dr. Tompar-Tiu, and the lack of meaningful discussion of that evidence by the Commissioner, the Court cannot conclude that the ALJ's decision is supported by substantial evidence. *See Lesterhuis*, 805 F.3d at 88-89 (ALJ's decision is not supported by substantial evidence "because the new evidence contradicted the ALJ's conclusion in important respects"); *Ducady*, 2016 WL 5462831, at *6; *Estrella obo MRE*, 2017 WL 2693722, at *23 ("[A]spects of the newly submitted records [contradict the ALJ's finding of not disabled], and, could, reasonably, lead a fact finder to reach the opposite conclusion.").

Accordingly, this action is remanded for further proceedings. On remand, the newly submitted records should be considered by the ALJ in evaluating Plaintiff's claim and consideration should be given to further developing the record. Reversal of the decision would not be appropriate because the ALJ should have an opportunity to review the entire

administrative record, including the new evidence submitted by Plaintiff on appeal, before determining whether Plaintiff is eligible for benefits.

Because the Court concludes that remand is appropriate based on the new and material evidence from Dr. Tompar-Tiu, the Court does not reach the parties' remaining arguments.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion be DENIED and Plaintiff's motion is GRANTED insofar as this case is remanded for further proceedings.

Dated: December 26, 2018  　　　　　　　　　　Respectfully submitted,
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　KATHARINE H. PARKER
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge